Lawrence, J.
*626 The defendant, the Cleveland Humane Society, is a corporation organized under the laws of Ohio, the object of which, among other things, is the enforcement of laws for the prevention of cruelty to animals. By statute such societies are authorized to appoint agents for the purpose of prosecuting any person found guilty of an act of cruelty to animals; and such agents, when their appointment has been approved by the mayor of the city or village for which they are made, are authorized to arrest any person found guilty of violating any provisions of the law protecting animals or preventing cruelty thereto. It is also provided by statute that an officer, agent or member of such a society may interfere to prevent the perpetration of any act of cruelty to animals in his presence and use such force as is necessary to prevent it, and to that end may summon to his aid any bystanders. It is further provided that the word “cruelty” includes every act, omission or neglect whereby unnecessary or unjustified. pain or suffering is caused, permitted or allowed to continue, when there is a reasonable remedy or relief. Other sections of the statutes impose penalties upon any person found guilty of cruelty to an animal.
As the only evidence respecting the acts of the defendant in the matters complained of by the plaintiff is the admission contained in the defendant’s answer, I will read that in this connection, instead of repeating the charges in the petition. The defendant says, “that under some arrangement between the railroad companies transporting interstate shipments of live stock and the Cleveland Stockyards Company, the terms of which are unknown to the defendant, said stockyards company, in behalf of said carriers, attends to the unloading, feeding, resting, and reloading for shipment on to destination of certain shipments passing through Cuyahoga county; that in the exercise of the authority conferred upon it by law, and for the purpose of preventing ' unnecessary and unjustifiable pain or suffering on the part of said .animals, or allowing the same to continue, the' defendant-, has, at various times when such unnecessary and unjustifiable, .pain and suffering.on. the part of said animals'was being caused or permitted in the presence of its officers _ and *627 agents, and upon receipt of information from officers and employes of said stockyards company and from inspectors of the United States Government, charged with the duty of enforcing compliance with said ‘federal twenty-eight hour law” so-called that there were dead and injured animals among the live stock so being transported, and that animals so physically defective as to render them unfit to be carried to destination were included in the shipments, has refused to permit live stock removed from ears for feed and rest at the yards of said stockyards company in said county of Cuyahoga and state of Ohio, to be reloaded into cars in which there weré dead animals, until such carcasses had been removed, and has further required the removal, and refused to permit the reloading of injured' and crippled animals, and animals whose physical condition was such that their reloading and transportation would subject them to unnecessary or unjustifiable pain or suffering.”
The plaintiff contends that the acts of the defendant in the premises are unreasonable and unnecessary; that the shipments of live stock thus interfered with are interstate shipments; that such acts constitute an unauthorized and illegal interference with interstate commerce, and are in violation of the Constitution of the United States relating to interstate commerce, and of the acts of Congress passed pursuant to the authority to regulate commerce among the states vested in Congress by the Federal Constitution; and that Congress has passed laws completely and fully controlling the humane and sanitary treatment of interstate shipments of animals, which apply to interstate shipments of animals unloaded in Cleveland, in compliance with said so-called twenty-eight- hour law.
On the ground that the acts complained of constitute an unreasonable and unlawful interference with and damage to the business of the plaintiff, which are continuous in character and for which it has no adequate remedy at law, the plaintiff prays for an injunction against the defendant, its officers and agents, from further doing the acts complained of.
" Coming now to the question of the validity of the acts of the défendant as affecting interstate shipments of live stock, T will *628 briefly indicate my views as to some of the preliminary questions which have been discussed by counsel.
Í think there is sufficient evidence tending to show that the plaintiff has an interest in the subject-matter of this action, and that its business has to some extent been injuriously affected by the acts complained of, so that the plaintiff is entitled to maintain this action if it is otherwise entitled to relief. I do not give any weight, however, in this connection, to any acts by the stockyards company, except so far as it followed the directions of the defendant’s agents not to reload crippled and dead animals into the cars. This company is the agent of the railway company, which is to be deemed the agent of the plaintiffs; and if the former did not dispose of such animals to the best advantage, the defendant would not be responsible for that.
So far as concerns the crippled animals removed from cars at Cleveland, it clearly appears that the reloading of such animals into the cars with other animals would be cruelty as defined in our statutes; and that the acts of the defendant in preventing the same are within the authority conferred upon it by the statutes. In respect to the dead animals which the defendant has required to be removed from cars before live animals were reloaded therein, it appears that, under some circumstances liable to occur, the presence of the carcasses of the dead animals may be a cause of injury to live animals; and also the offensive condition of the dead animals and the foul odor therefrom may sometimes cause sickness in live animals confined in the same ear. There is no evidence as to the facts in this respect as affecting any of the particular cars or animals involved here. However, the humane society is one of the instrumentalities of the state for the enforcement of the laws to prevent cruelty to animals, and I think it must be held that its officers and agents are vested with discretion in the exercise of the powers conferred upon them by law; and when they act upon the ground that the presence of dead animals in the same car with live animals is cruelty to the latter, the court, in the absence of any evidence to the contrary as to any particular case, ought not to interfere with their discretion^ I shall assume, therefore, that- the *629 tilings prevented by the defendant would constitute cruelty to animals in violation of the provisions of our statute on that subject, if such statutes are applicable to interstate shipments of live stock.
This brings me to what I regard as the important question in the case, which is, whether the enforcement of these statutes, as shown here, violates the clause of the Federal Constitution providing that the Congress shall have power to regulate commerce with foreign nations and among the several states.
It is not practicable to review the many decisions of the Supreme Court of the United States relative to this clause of the Constitution. In general, it may be stated that the rule to be deduced from the cases is that, where a state statute is of a general nature relating to a subject which admits and requires uniformity of regulation, and if it operates as a direct restriction of interference with interstate commerce, such state statute is invalid, even though Congress has not legislated upon the particular subject; but in the absence of congressional action, state legislation is not forbidden touching matters either local in their nature or operative merely-as aids to commerce, and which affect interstate commerce only incidentally. Mobile v. Kimball, 102 U. S., 691; Brown v. Houston, 114 U. S., 622; Railway v. Solan, 169 U. S., 133; Hennington v. Georgia, 163 U. S., 299; Railway v. Ohio, 173 U. S., 285.
In Railway v. Hefley, 158 U. S., 98, speaking of a statute of Texas which was held invalid because covered by the act of Congress known as the Interstate Commerce Law, the court said that clearly the state and the national acts relate to the same subject-matter and prescribe different rules, and that in such ease the state law must give way, for, though laws of such character rest upon the police power of the state, they must yield whenever Congress, in the exercise of the powers granted to it, legislates upon the precise subject-matter.
In Morgan v. Louisiana, 118 U. S., 455, holding valid the system of 'quarantine laws established by the statutes of Louisiana, the court say, in the syllabus, that while some of the rules of that system may amount to regulation of commerce with foreign *630 nations or among the states, though not so designed, they belong to that class which the states may establish until Congress acts in the matter by covering the same ground or forbidding state laws. And in the opinion (on page 464) it is said:
“But it may be conceded that whenever Congress shall undertake to provide for the commercial cities of the United States a general system of quarantine, or shall confide the execution of the details of such a system to a national board of health, or to local boards, as may be found expedient, all state laws on the subject will be abrogated, at least so far as the two are inconsistent.”
The case of Railroad v. Haber, 169 U. S., 613, involved a statute of the state of Kansas, which related to the bringing into the state- of cattle liable to communicate disease to domestic cattle of the state. It was contended that the act of Congress of May 29, 1884, known as the animal industry act, together with the act of March 3, 1891, appropriating money to carry out the provisions' of that act, and Section 5258 of the Kevised Statutes of the United States relating to the transportation of passengers, freight, property, etc., from'one state to another by railroad, cover substantially the whole subject of the transportation from one state to another of live stock liable to impart or capable of communicating infectious or contagious diseases, and therefore that the state of Kansas had no authority to deal in any form with that subject. After citing and reviewing many previous decisions, the court held against this contention, and in the opinion (on page 627) it is said:
“Although the power of Congress to regulate commerce among the states, and the power of the states to regulate their purely domestic affairs, are distinct powers, which, in their application, may at times bear upon the same subject, no collision that would disturb the harmony of the national and state governments or produce any conflict between the two governments in the exercise of their respective powers need occur unless the national government, acting within the limits of its constitutional authority, takes under its immediate control and exclusive supervision the entire subject to which the state legislation may refer.”
*631 On page 623 of the opinion, speaking of the Federal Animal Industry Act, the court say:
“While the states were invited to co-operate with the general government in the execution and enforcement of the act, whatever power they had to protect their domestic cattle' against such diseases was left untouched.”
There is, however, nothing in the opinion to indicate that the holding of the court was based upon the fact of such invitation, or that the decision would otherwise have been different. Í speak of this, because counsel for the plaintiff here has contended .that such was the ground of the decision, quoting a remark to that effect by Justice Brewer, in his dissenting opinion in Railway v. Ohio, 173 U. S., 285 (on page 325). But although the case of Railway v. Haber, 169 U. S., 613, is cited in the opinion of the majority of the court in Railway v. Ohio, no such construction is given to it, and the remark of Justice Brewer seems to be wholly without foundation except as the exl pression of his own individual view]
The act of Congress for the establishment of the bureau of animal industry authorizes the Secretary of Agriculture to prepare such rules' and regulations as he may deem necessary for the suppression and extirpation of contagious, infectious and communicable diseases in animals, and to provide against the spread of the same from one state to another, but no provision is made in said act for the prevention of cruelty to animals. The inspectors in this bureau make inspections of cattle passing through Cleveland, with reference to contagious diseases and sanitary conditions, and dead animals also are inspected if the existence of such diseases is suspected, and, if the same be found, action is taken by the inspector in accordance with the rules and regulations prescribed;-otherwise no action is taken in reference to dead animals. The instruction to the inspectors is, that if they see evidence of inhumane treatment of animals, they are to call the matter to the attention of those in charge, and, if the latter pay no attention, to report it to the department at Washington] The testimony, is, that the only action taken by the department in such cases is to refer the matter to the local *632 humane society or other body looking after such things. Thus it appears that neither by the terms of this statute, nor by any rules or regulations adopted thereunder, has the bureau of animal industry any authority respecting the humane treatment of animals.
The contention of the plaintiff that the state law concerning cruelty to animals is unconstitutional, as applied to interstate commerce, must rest, therefore, on the provisions of the act of June 29, 1.906 (34 U. S. Statutes at Large, 607), which provides that no carrier transporting live stock in interstate commerce shall confine the same in ears, boats or vessels of any description for a period longer than 28 consecutive hours, without unloading the same in a humane manner, into properly equipped pens for rest, water and feeding, for a period of at least five consecutive hours. This, is undoubtedly a statute relating to the prevention of cruelty'.to animals, but it is limited in its application to the specific things provided for, and does not undertake to prevent all cruelty to animals in the course of transportation. It would be impossible for the federal officers, under its provisions, to prevent the transportation of crippled or dead animals with other animals. The state law, which embraces any cruelty to animals, affects interstate commerce only incidentally, is not inconsistent with the federal statute, and must rather be regarded as an aid to the policy of the latter. The federal statute does not cover the same ground, but only a part thereof. Th,e subject is one which does not require uniformity of regulation as to alt details, but the general policy in view can be carried out in some respects better by local regulation than by federal regulation. In the matter of the unloading of cars every twenty-eight hours for rest and feed, and the doing of this in a humane manner, the federal statute covers the ground and the state statute would probably not be operative; but, in my opinion, state regula!' to prevent cruelty to animals in other respects is not prohibited, because Congress has not legislated as to that particular subject.
My conclusion is, that the plaintiff is not entitled to any relief, and its petition will be dismissed.